UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANCIS J. KEATING, JR.,**<br><br>         **Plaintiffs,**<br><br>-against-<br><br>**AIR & LIQUID SYSTEMS CORPORATION, Including CBS CORPORATION and FOSTER WHEELER LLC, ET AL.,**<br><br>         **Defendants.** | **CIVIL ACTION NO.:** |

## **DEFENDANTS CBS CORPORATION AND FOSTER WHEELER LLC'S NOTICE OF REMOVAL**

TO THE HONORABLE JUDGE OF UNITED STATES DISTRICT COURT:

 Pursuant to Title 28 U.S.C. §§ 1331, 1442(a)(1) and 1446, Defendants CBS Corporation, f/k/a Viacom Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation (hereinafter "Westinghouse") and Foster Wheeler LLC ("Foster Wheeler") (collectively, "Defendants")[1] give notice of removal of an action filed against them in the Supreme Court of New York, New York County, to the United States District Court for the Southern District of New York. In support, Defendants respectfully offer the following:

---

[1] Defendants do not waive any of their objections or defenses, including those based on lack of personal jurisdiction.

**Preliminary Matters**

1. On or about October 10, 2018, plaintiff Francis J. Keating, Jr. filed a lawsuit in the Supreme Court of New York, New York County, Index No. 190384/18. Plaintiff served Defendants with the Complaint on October 15, 2018. *See* Complaint attached hereto as Exhibit A.

2. Prior to being served with the Summons and Complaint, Defendants received a copy of plaintiff's Responses to Standard Interrogatories ("Interrogatory Responses") on or about October 12, 2018. *See* Interrogatory Responses attached hereto as Exhibit B. The Interrogatory Responses include allegations that Mr. Keating was exposed to asbestos from various products while employed by the United States Navy as a machinist's mate at the Brooklyn Navy Yard and at the Norfolk Navy Yard, and while serving aboard the USS Robert L. Wilson (DD-847), from 1953 to 1974.

3. Thus, this Notice of Removal is timely filed in that it is filed within thirty (30) days after service of the Summons and Complaint on Defendants from which they ascertained that this case is removable. 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999) (removal not valid until served, as Summons and Complaint function as *sine qua non* directing an entity to participate in a litigation).

**Nature Of The Case**

4. The case is based on plaintiff's allegations that Mr. Keating's asbestos-related disease, specifically lung cancer, was caused by his exposure to asbestos dust and/or fibers.

5. Plaintiff asserts failure to warn claims claims against Defendants.

**Grounds For Removal**

6. This Notice of Removal is filed within thirty (30) days of Defendants' receipt of the Summons and Complaint. 28 U.S.C. § 1446(b) and *Murphy*, *supra*. Mr. Keating's allegations stem from his service at the Brooklyn Navy Yard and Norfolk Navy Yard, both federal enclaves. Thus, the

basis of removal is that the claims in this matter arise under the laws of the United States Constitution, over which a federal district court enjoys exclusive jurisdiction pursuant to 28 U.S.C. §1331.

7. Furthermore, Defendants manufactured marine boilers, turbines and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy. Foster Wheeler confirmed that it manufactured the economizers and Westinghouse confirmed that it manufactured the turbine-generators, all aboard the USS Robert L. Wilson (DD-847). Therefore, an additional basis for removal is that, in the manufacture and sale of boilers, turbines and auxiliary equipment for the Navy, including all aspects of warnings associated with that equipment, Defendants were acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

8. Should plaintiff file a motion to remand this case, Defendants respectfully request an opportunity to respond more fully in writing, but offer the following authorities at this time:

**I.  Federal Enclave**

9. Pursuant to Article I, Section 8, Clause 17 of the United States Constitution, the United States has exclusive jurisdiction over "all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." "Such places are deemed 'federal enclaves' within which the United States has exclusive jurisdiction." *Akin v. Ashland Chemical Co.*, 156 F.3d 1030 (10th Cir. 1998).

10. This exclusivity makes a tort committed within a federal enclave a federal question, giving a district court jurisdiction to hear the case. *See* 28 U.S.C. §1331. "Personal injuries which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction. *Mater v. Holley*, 200 F.2d 123, 125 (5th Cir. 1952) (providing jurisdiction for actions for death or personal injury within a place of exclusive federal jurisdiction).

11. Because plaintiff alleges that his asbestos exposure occurred while he served at the Brooklyn Navy Yard and at the Norfolk Navy Yard, both federal enclaves, jurisdiction is proper in this Court. *See United States v. Johnson*, 994 F.2d 980, 984 (2d Cir. 1993) (Brooklyn Navy Yard is a federal enclave); *Western Union Tel. Co. v. Chiles*, 214 U.S. 274 (1909) (recognizing Norfolk Naval Shipyard as a federal enclave) and *U.S. v. Rowe*, 599 F.2d 1319 (4th Cir. 1979) (same).

**II.     Federal Officer**

12. As recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D. Pa. 2010), Defendants have a federal defense to this action. *See Hagen*. In examining similar evidence submitted in the case at bar, Judge Eduardo C. Robreno found that defendant Foster Wheeler raised a colorable defense to plaintiff's failure to warn claims, *i.e.,* government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they were designed and manufactured by Foster Wheeler according to strict Navy specifications. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

13. In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute. First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Hagen,* at 776. The definition of a "person" includes a corporation. *Id.* Second, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense.

4

*Id.* Third, the defendant must establish that the suit is for any act under color of federal office, i.e., there is a causal connection between the charged conduct and asserted official authority. *Id.* Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

14. The second and third elements require a substantial degree of federal control over defendant's work and a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Hagen*, at 776. Although set forth in the statute as two separate requirements, Judge Robreno recognized that the evidentiary similarities between the "acting under" and "causal nexus" prongs have often prompted courts to collapse them into one single requirement. *Id.* at 784 [*citing Good v. Armstrong World Indus., Inc.* 914 F.Supp. 1125, 1128 (E.D. Pa 1996) ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiff's claims and the conduct taken pursuant to direction from a federal officer.")].

15. What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Like the *Hagen* court, federal courts across the country, including the Second Circuit, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to detailed and strict government specifications. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (reversing lower court's grant of remand and finding Foster Wheeler satisfied federal officer removal statutory requirements); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207 (4th Cir. 2017) (reversing lower court's grant of remand and ruling Foster Wheeler's evidence established colorable government contract defense to plaintiff's failure to warn claims); *Cuomo v. Crane Co.,* 771 F.3d 113 (2d Cir. 2014) (Crane Co. provided sufficient evidence that easily cleared the low threshold for asserting a federal contractor defense); *Zeringue v. Crane Co.,* 846 F.3d 785, 789-90 (5th Cir. 2017) (section §1442(a)(1) is a "pure jurisdictional statute" that permits a federal defense "to serve as the

federal question that endues the court with jurisdiction"); *Leite v. Crane Co.,* 749 F.3d 1117 (9th Cir. 2014) (plaintiff's failure to warn claims and defendant's government contractor defense is one for the federal and not state court to decide); *Ruppel v. CBS Corporation,* 701 F.3d 1176 (7th Cir. 2012) (reversing lower court decision to remand and finding removal proper where Westinghouse established through affidavits that it had a colorable government contractor defense to plaintiff's claims).

16.     The predominant view holds that "a colorable federal defense need only be plausible." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir.2010); *see also* Ruppel, 701 F.3d at 1182.  In the context of a "failure to warn" case, **the defendant need not show that the government expressly barred or broadly preempted the inclusion of asbestos warnings on its products**. *See Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431, 438 (5th Cir.) *cert. denied* 531 U.S. 919 (2000) (government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government. *Kerstetter,* 210 F.3d at 438).

17.     As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "`continuous back and forth' between the contractor and the government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need

only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.* at 438.

18. As explained by J. Thomas Schroppe:

> The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers…The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy. Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

*See* Affidavit of J. Thomas Schroppe, dated December 18, 2009, attached hereto as Exhibit C, at ¶¶ 21 and 22.

19. In designing, manufacturing and supplying the turbines at issue in this case to the United States Navy, Westinghouse acted under the detailed and ongoing direction and control of one or more federal officers. More specifically, Westinghouse manufactured and designed such equipment in accordance with precise, detailed, specifications promulgated by Navy Sea Systems Command. Moreover, an Inspector of Naval Machinery ("INM"), who was resident at Westinghouse's manufacturing facility, personally oversaw the manufacturing process and

enforced compliance with the Navy's design specifications. Further, the Westinghouse Navy equipment in question was subject to various tests and trials supervised by the United States Navy before it was approved for use on military vessels. In sum, all relevant aspects of the design and manufacture of the turbines and/or related equipment were subject to close, detailed and ongoing supervision and control by the United States Navy and its officers.

20. There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Foster Wheeler that was not known to the United States and the Navy (*See* Affidavit of Lawrence Stilwell Betts, MD, PhD, CIH, FACOEM, dated November 22, 2010, attached hereto as Exhibit D, at ¶31, and Affidavit of Samuel A. Forman, M.D., dated November 23, 2010, attached hereto as Exhibit E.

21. Nowhere is it required that defendants produce physical contracts to prove the government's extensive direction and control over product specifications to satisfy the requirements of § 1442(a)(1).

22. A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("right of removal is absolute for conduct performed under color of federal office"); *Kolibash v. Comm. on Legal Ethics*, 872 F.2d 571, 576 (4th Cir.1989) ("right of removal conferred by § 1442(a)(1) is to be broadly construed."). The removing defendant "need not win his case before he can have it removed" nor even establish that the defense is "clearly sustainable". *See Ripley*, 841 F.3d at 210 (citing *Willingham*, 395 U.S. at 407).

23. Defendants are not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiff's action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994); *Ely Valley Mines v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1314–15 (9th Cir.1981) (section 1442 is an exception to the general rule that all defendants must join in a notice of removal); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir.1960). When a federal officer removes a case under § 1442, "the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of co-defendants." *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir.1980).

24. As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon defendant are being filed with this Notice of Removal.

## Conclusion

25. Removal of this action is proper under 28 U.S.C. §§ 1331 and 1442, because federal courts have federal question jurisdiction over tort claims that arise on "federal enclaves," and this action is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because Defendants were acting under an officer or agency of the United States.

WHEREFORE, Defendants, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, remove this action for trial from the Supreme Court of New York, New York County, on this 9th day of November, 2018.

Respectfully submitted,

**TANENBAUM KEALE LLP**

/S/ Afigo I. Okpewho-Fadahunsi
Afigo I. Okpewho-Fadahunsi
Three Gateway Center
100 Mulberry Street, Suite 1301
Newark, New Jersey 07102
(973) 242-0002 (Tel)
(973) 242-8099 (Fax)
afadahunsi@tktrial.com
*Attorneys for Defendants*
*CBS Corporation and Foster Wheeler LLC*

All Known Counsel (via ECF and/or Email)